# Commonwealth v. Breyessee, Appellee.

*Criminal law—Murder—Self-defence.*

Life may be lawfully taken in self-defence; but it must appear that he who takes it was in imminent danger of death or great bodily harm, and that no other way of escape from the danger was open to him.

*Murder—Killing of person not intended.*

Where a deliberate purpose is formed to kill one person and the defendant fires a pistol at him for that purpose, the fact that the ball misses its intended victim, and kills another person, does not relieve the murderer.

*Murder—Evidence—Credibility of defendant—Charge of court.*

On the trial of an indictment for murder it is proper for the court to charge that the extent to which the prisoner was contradicted by the witnesses, the character of the testimony given by them, the reasonableness of his own testimony, and its consistency with the established facts in the case, were all proper subjects for consideration in determining the credit to which his testimony was entitled.

*Verdict—Practice, oyer and terminer.*

The verdict as recorded is the verdict of the jury, and the form prepared in the jury room, though handed to the clerk, is no part of the record, and has no significance.

Argued Feb. 19, 1894.    Appeal, No. 52, Oct. T., 1894, by defendant, Noel Breyessee, from judgment of O. & T., Allegheny Co., Sept. T., 1893, on verdict of guilty.    Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Indictment for murder.    Before SLAGLE, J.

At the trial it appeared that, on Sept. 24, 1893, Noel Breyessee, alias Maison Noel, shot and killed Sophia Raes with a pistol.    The evidence tended to show that about ten o'clock in the evening of the day in question the prisoner, together with August Maison, alias August Breyessee, left their house and went up the road past the house of August Raes, husband of the deceased.    They did not find Raes at home, and they concealed themselves in the coal shed to await his return.    Sometime afterwards Raes and his wife returned, when the prisoner and his companion attacked them with stones.    Raes was knocked down and his wife ran to summon a neighbor.    When she returned, the prisoner, at the instigation of his companion, shot twice in rapid succession, and the woman fell and after-

wards died.   The prisoner testified in substance that Raes began the attack, and was knocked down ; that then Mrs. Raes ran away screaming, and presently returned with a neighbor, and that then Raes attacked the prisoner with a knife ; that the prisoner shot the pistol in the air to frighten Raes, and then shot the second load, which passed over Raes's shoulder, killing his wife.

Defendant and his companion were indicted jointly, and, a severance being granted, defendant was tried first.

The court charged in part as follows :

" [The statement of the defendant is not in accordance with the testimony of any other witness in the case.   It is not consistent with the statement of any other witness in the case, so far as I recollect, and the first question for you is, do you believe that to be the true state of the facts ?   He is a competent witness, made so by the law.   In determining whether or not his statement is true, you will look at the testimony of the other witnesses to see whether it is consistent with them or in contradiction to them, and if in contradiction to them, upon which you can rely.   You will look at the interest he has in the case, and all the other circumstances attending it, and determine whether or not that statement is true.   If it is not true, of course the question of self-defence would fall, because there is nothing in the testimony of the other witnesses, so far as I recollect it, that would justify any inference that this attack was made in self-defence.   But if it is true, then comes the question of whether or not it constitutes self-defence, and in reference to that the law is this : To excuse homicide upon the plea of self-defence, it must appear that the slayer had no other reasonably possible, or at least probable, means of escaping, and that his act was one of necessity.   The act of the slayer must be such as is necessary to protect his person from death or great bodily harm.   If he could have escaped by flight he was bound to flee.   When it comes to the question of whether one man shall flee or another shall die, the law decides that the former shall flee rather than that the latter shall die.   The law is too careful of human life to permit it to be taken without the exoneration of necessity.   When, therefore, one man takes another's life, and is called upon to answer to the law, he must show such necessity.] [5]

" Admitting the prisoner's statement to be true, it is for you to determine whether there was a necessity for firing the shot in order to protect himself from death or great bodily harm, or whether the circumstances justified the prisoner in so believing, and in determining that question you will look at the parties themselves, you will look at the men as they appeared before you, their size, their physical ability, and then all the circumstances surrounding the case as detailed by the prisoner himself, and say whether or not you believe it was necessary for him to take any person's life in order to protect his own or prevent great bodily harm to himself.  If he could have got away without that, he was bound to go, and if he fired the shot without such necessity he would not be justified under the law by reason of the excuse of self-defence.   If, however, you should find he was not justified in so defending himself under the circumstances of his statement of the case, the belief might raise two other questions.   The first is the question of accidental killing.   As I have said, I did not understand the prisoner to say that he did not fire the shot at Raes, and if he fired it at him and struck Mrs. Raes he is guilty of the same offence, having killed her, that he would have been guilty of had he killed Raes himself, because the killing of another person instead of the one intended to be killed is not an accident within the law, and if a person intending to kill one kills another he is guilty of murder just the same as if he had killed the person whom he had intended to kill.   But I leave to you the question of whether or not there was anything in the testimony that would justify the belief that he was not intending to shoot any person, but, in firing this pistol, accidentally killed the woman.   If he so said, he is entitled to the benefit of that, but you have the fact that he was close to the parties, that he actually did kill one, and it would be a very violent inference, it seems to me, that he did not shoot at some person ; that he intended to shoot into the air.   Still I leave the question for you.   And in that case, the question whether or not he would be guilty of any offence would be whether or not he was engaged in merely an unlawful act, or one which in its character was felonious; and that you will possibly gather from what is said hereafter. If, however, as I have said, he was not excused by reason of accident or self-defence, then his statement, if true, the facts, as

he gives them, would involve the necessity of inquiring whether or not the offence was one of murder or of manslaughter."

Defendant's points were as follows :

" 1. If the jury believe from the evidence that the husband of the deceased approached the defendant with a knife in his hand, and in such a threatening manner as to induce a belief on the part of the defendant that either his life was in danger or that he might suffer great bodily harm, and that, acting on this belief of danger to himself, he fired a revolver which killed the wife of his assailant, this would not be murder of the first degree, even though, at the time the shot was fired, the defendant intended to kill, and this though, in point of fact, there was no foundation for the apprehension of danger to the defendant. *Answer :* I don't know that I understand this point. If it is intended to state the law of self-defence, it lacks one of the essential elements—that he had no other means of escape. If it is intended simply to affect the grade of the crime of murder, it is affirmed." [2]

" 2. The fact that the defendant killed the wife instead of the husband will not be murder of the first degree, if the jury find from the evidence that the husband of the deceased attacked the defendant in such a manner as to create a fear on the part of defendant of danger to his life or great bodily harm, even though the defendant, impelled by the fear thus created, did shoot to kill, and this will apply with equal force if the jury find that the wife joined in the assault upon the prisoner. *Answer :* This is also affirmed, with the qualification that there was no other means of escape." [3]

" 3. The fact that the deceased was killed by the pistol shot fired by the hand of the defendant will not justify the jury in finding a verdict of guilty of any degree of murder, and before the jury can find a verdict of the higher, or first degree, the commonwealth must prove, and the jury must find, beyond a reasonable doubt, that the killing was the result of preformed purpose on the part of the defendant to take the life of the deceased, and that it was deliberately and premeditatedly done. *Answer :* The first part of this point, ' the fact that the deceased was killed by the pistol shot fired by the hand of the defendant will not justify the jury in finding a verdict of guilty of any degree of murder,' is refused. The latter part of it, ' before

the jury can find a verdict of the higher, or first degree, the commonwealth must prove, and the jury must find, beyond a reasonable doubt, that the killing was the result of a preformed purpose on the part of the defendant to take the life of the deceased, and that it was deliberately and premeditatedly done,' is affirmed, with the qualification, however, that if the intention was to kill Raes, and, in attempting to carry out that intention, Mrs. Raes was killed, he would be equally guilty." [4]

Verdict, guilty of murder of the first degree.

*Errors assigned* were (1) refusal to arrest judgment on account of uncertainty of verdict as stated in opinion of Supreme Court; (2–5) instructions; quoting instructions and reasons for motion in arrest of judgment.

*T. H. Davis, W. A. Blakeley* with him, for appellant, cited: Com. v. Pastorius, 84 Pa. 158; Com. v. Pipes, 158 Pa. 25; Logue v. Com., 38 Pa. 265; Com. v. Cleary, 135 Pa. 84; Com. v. Nicely, 130 Pa. 271.

*Clarence Burleigh*, district attorney, for appellee, not heard, cited: 1 Whart. Cr. L. § 95; Com. v. Drum, 58 Pa. 20.

OPINION BY MR. JUSTICE WILLIAMS, March 26, 1894:

This case appears to have been tried with great care in the court below. The distinctions between murder of the first and of the second degree were plainly pointed out, and the facts were submitted to the jury in a manner of which no just complaint can be made. The conviction of the defendant of the crime of murder of the first degree was the result of the overwhelming weight of the evidence against him.

The learned counsel for the defendant assigns error to the answers made by the learned judge to his first and second points. These points were answered in the affirmative, subject to a qualification, and it is of the qualification that complaint is made. These points drew the attention of the court to the testimony given by the defendant, and asked, in effect, that if, at the time the fatal shot was fired by the defendant, he believed himself to be in danger of death or great bodily harm at the hands of the assailant, and that " acting on that belief he fired

a revolver which killed the wife of the assailant, this would not be murder in the first degree, even though at the time the shot was fired the defendant intended to kill; and this though, in point of fact, there was no foundation for the apprehension of danger to the defendant." The learned judge affirmed this point so far as it was directed to the degree of the murder committed, but added: "If it is intended to state the law of self-defence, it lacks one of the essential elements, that he had no other means of escape." We think the defendant had no reason to complain of his answer. It gave him the benefit of an unqualified affirmance of his point so far as it related to the degree of the offence committed, and it stated correctly the law of self-defence. Life may be lawfully taken in self-defence; but it must appear that he who takes it was in imminent danger of death or great bodily harm and that no other way of escape from the danger was open to him. It is the duty of one who is assailed to flee, if flight is possible; and it is only when he is persuaded that he must suffer death or grievous bodily harm at the hands of his assailant, or take the life of his assailant that he may save his own, that he can justify his act as done in self-defence.

The qualification of the answer to the third point was also a proper one. Where a deliberate purpose is formed to kill A and the defendant fires a pistol at him for that purpose, the fact that the ball misses its intended victim and takes effect on B and kills him, does not relieve the murderer. He is equally guilty whether his effort to kill A results in the taking of his life or the life of B.

The fifth assignment of error is equally untenable. The learned judge instructed the jury in the tests they should employ in determining the credibility of the defendant. He told them that the extent to which he was contradicted by the witnesses, the character of the testimony given by them, the reasonableness of his own testimony, and its consistency with the established facts in the case, were all proper subjects for consideration in determining the credit to which his testimony was entitled. This was a proper instruction to give and was not harmful to the defendant, unless his testimony was of such a character that the application of these tests led the jury to reject it.

The remaining assignment relates to the overruling of the motion in arrest of judgment.   The reasons in support of this motion rested on the following circumstance.   When the jury came into court to render their verdict, it was delivered and recorded in the usual manner; after which the jurors were discharged and directed to the office of the county commissioners to receive their pay.   After they had left the box the clerk discovered a form for a verdict in pencil on the back of the indictment, in which the defendant was named " August Maison otherwise called August Breyesse."   The clerk called the attention of the judge to this indorsement, and he ordered the jurors recalled to the box, drew their attention to their verdict as already entered, and to the indorsement on the indictment, and told them if the name as written on the indictment was a mistake and their verdict as recorded was correct they might say so.   The jurors thereupon answered that the verdict as recorded was correct.   The defendant's counsel took exception to this action, and moved in arrest of judgment, alleging that the verdict was uncertain, as it was against one person in the pencil indorsement, and against another as recorded.   It is a sufficient answer to this motion to refer to the well-settled rule that the verdict as recorded is the verdict of the jury, and that the form prepared in the jury room though handed to the clerk is no part of the record and has no significance whatever.   Dornick v. Reichenback, 10 S. & R. 84; Rees v. Stille, 38 Pa. 138; Scott v. Scott, 110 Pa. 387.   It was wholly unnecessary to recall the jury.   It was done out of abundant caution, but it did neither good nor harm.   The verdict had been entered on the record in proper form, against the defendant on trial; and the pencil memorandum was without the slightest legal significance.  The reasons in support of the motion in arrest of judgment were properly overruled, and the judgment appealed from is now affirmed.

The record is remitted for purposes of execution.