# Commonwealth v. Russogulo, Appellant.

*Criminal law — Murder — Charge — Fair preponderance of evidence.*

1. On the trial of an indictment for murder it is not error for the trial judge in his charge to say that the "burden rests upon a defendant, alleging self-defense, to establish it by the preponderance of the evidence." The use of the word "fair" before the word "preponderance" is not essential.

*Criminal law—Murder—Charge—Adequacy of charge—Absence of request for instructions.*

2. Upon a trial for murder the judge should give a general review of the evidence on the one side and the other, which fairly and adequately presents the respective contentions of the parties; but the manner in which the evidence shall be dealt with must of necessity depend upon the circumstances in each case, and to a degree upon the line of arguments pursued by counsel in addressing the jury.

3. In the absence of a request for more specific instructions the charge will not be held to be inadequate, albeit the evidence on one side might properly have been more fully referred to.

*Criminal law—Murder—Excerpt from charge—Assignment of error.*

4. An excerpt taken from a particular part of the charge, and assigned as error, is not a ground for reversing a conviction in a murder case, where it appears that the excerpt taken with its context correctly states the law.

*Criminal law—Murder—Charge—Failure to charge as to presumption of innocence.*

5. Failure by the trial judge to instruct the jury as to the presumption of innocence of the defendants in a murder case, is not a ground for reversal, if it appears that the judge properly and fully instructed the jury on the question of reasonable doubt; and particularly is this the case where defendant's counsel did not direct the judge's attention to the omission, before the jury retired, or thereafter and prior to the rendition of the verdict.

6. The presumption of innocence is the reason which gives rise to and forms the basis of the rule as to reasonable doubt. Hence, when the rule itself is properly put before the jury, in the absence of specific request to charge further upon the subject, an omission to state the underlying principle, should not, ex necessitate, be counted reversible error.

*Criminal law—Murder—Wound in vital part—Provocation.*

7. In a murder trial, the court commits no error in charging that where one is killed by a wound in a vital part, administered through a deadly weapon, "no words of profanity, reproach, abuse or slight assault, are provocations sufficient to free the party killing from the guilt of murder......The law imposes upon every one the duty of keeping his passions under reasonable restraint, and, therefore, if one lashes himself into a passion at some slight provocation, and without reasonable excuse, he cannot defend against murder because of such passion; nor can he at the recollection of some past injury or insult or black-hand demand for money, work himself into a heat over it, and so excuse himself; the act, to reduce the killing from murder to manslaughter, must be upon a sudden and sufficient provocation."

*Criminal law—Murder—Self-defense—Defense of others.*

8. In a murder trial where the four defendants claimed that they shot at the deceased and his companion in self-defense, while

the Commonwealth's proof was that the deceased and his companion were shot at by all of the four defendants without apparent reason, as they were passing defendant's doorsteps, and defendant's counsel at the time of the charge requested the judge to say to the jury that if one of the defendants "emerging suddenly from the house, believed his brother's life was in danger, had the right to shoot," the judge commits no error in replying as follows: "It might be self-defense as to all, but if there was no self-defense at all at the start, it might reduce his crime to manslaughter. In other words under these circumstances you cannot kill a man without being an offender under the law."

9. The request as phrased would make the particular defendant's right to an acquittal depend entirely upon his "belief" that his brother's life was in danger, without regard to the reasonableness of that belief, or whether or not it was carelessly adopted; or whether or not the brother was, to the defendant's knowledge, the aggressor; and it also fails to consider the necessity for the defendant in question to use a deadly weapon upon the alleged assailants of his brother, in order to protect the latter. Even if the answer was improper, it did the defendant no harm as he was convicted of murder in the first degree.

10. To warrant taking life in self-defense there must be a reasonable ground for belief, upon the part of the slayer, that he is in imminent danger of loss of his own life or suffering serious bodily harm at the hands of the person killed, and the same rule applies to persons acting in defense of others.

*Criminal law—Murder—Refusal of new trial—After-discovered evidence—Appeal.*

11. A refusal of a new trial is not a ground for reversal in a murder case, where it appears that the so-called after-discovered evidence upon which the request for a new trial was based, was available to the defendant at the trial; and that even if introduced on a retrial, would not, in the opinion of the appellate court, bring about a different verdict.

*Criminal law—Murder—Corpus delicti—Evidence.*

12. The corpus delicti is established in a murder trial where one of the defendants admitted that he shot the deceased, naming him; that three of the defendants testified that after being shot the deceased fell in his tracks; that the policeman who picked him up, testified that he placed the deceased in a patrol wagon, and that he died in his presence on his way to the hospital; and the coroner's physician testified that he had performed an autopsy upon a man

identified as the deceased, naming him, and that this man died from pistol-shot wounds, which he described.

*Appeals—Assignments of error—Charge—Rule 27.*

13. An assignment of error to the inadequacy of the charge should set forth the charge as required by Rule 27.

14. Rule 27 is of practical importance, for, since the specifications of error are all that remain with the appellate court after the return of the record to the court below, it is essential to have them in proper form so as to show, thereafter, precisely what alleged errors were ruled upon.

Argued Oct. 14, 1918. Appeals, Nos. 83, 84, 85 and 86, Oct. T., 1918, by defendants, from judgment of O. & T. Allegheny Co., June Sessions, 1917, No. 12, on verdict of guilty in case of Commonwealth v. Charles Russogulo, Joseph Russogulo, Jack Guastaferra and Angelo Guastaferra. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and FOX, JJ. Affirmed.

Indictment for murder. Before BROWN, J.

At the trial Charles Russogulo, Joseph Russogulo and Jack Guastaferra, were convicted of murder of the first degree; Angelo Guastaferra was convicted of murder of the second degree. Judgments of sentences were passed.

*Errors assigned* were as follows, the request for an exception, as quoted in the 3d assignment of error, being repeated in the other assignments:

3. The court erred in its charge to the jury in saying:

"The burden rests on the defendants alleging self-defense to establish it by the preponderance of the evidence."

Council for defendant requests a general exception.

Exception allowed and bill sealed.

4. The learned court erred in its charge to the jury in prominently presenting the theory and strong features of the prosecution and ignoring those of the defendants, and in failing to present, as a connected whole, the case of the defendants with the law applicable thereto.

Exception allowed and bill sealed.   (Page 28.)

5. The court erred in its charge to the jury on evidence of good reputation of the defendants in saying:

"A man of good reputation may be guilty of a crime, an assault, a killing, and, if guilty beyond a reasonable doubt, he is not to be acquitted because preceding the commission of the crime he had borne an excellent reputation for peace."

Exception allowed and bill sealed.

6. The court erred in its charge to the jury in failing to define murder at common law, and explain to the jury the essential elements of the crime of murder.

Exception allowed and bill sealed.

7. The court erred in its charge to the jury in failing to instruct the jury as to the presumption of innocence of the defendants.

Exception allowed and bill sealed.

8. The court erred in its charge to the jury in saying:

"The law imposes upon every one the duty of keeping his passions under reasonable restraint, and, therefore, if one lash himself into a fury at some slight provocation, or without provocation and without reasonable excuse, he cannot defend himself against murder because of such passion, nor can he, by the recollection of some past injury or insult, or black-hand demand for money, work himself into a heat over it, and so excuse himself. The act, to reduce the killing from murder to manslaughter, must be upon a sudden and sufficient provocation."

"If the evidence, such as the aiming of a gun or pistol at the vital part, shows an intent to kill or to do great bodily harm, no words of profanity, reproach, or abuse or slight assault are provocation sufficient to free the party killing from the guilt of murder. Otherwise, every vile slander or epithet or slight assault or black-hand demand for money would be a warrant to kill. There is no such warrant in law."

Exception allowed and bill sealed.   (Page 28.)

9. The court erred in its charge to the jury in saying in answer to the oral request made by defendants counsel:

"By Mr. Robb: I will ask your honor to say to the jury that if Joe emerging suddenly from the house believed his brother's life was in danger, he had the right to shoot.

"By the Court: It would be at least manslaughter.

"By Mr. Robb: He would have the right to shoot.

"By the Court: It would be at least manslaughter.

"By Mr. Robb: It might be self-defense too.

"By the Court: It might be self-defense as to all; but, if there was no self-defense at all at the start, it might reduce his grade to manslaughter. In other words, under these circumstances, you cannot kill a man without being an offender under the law."

Exception allowed and bill sealed.

10. The court erred when it refused to grant a new trial upon after-discovered evidence.

11. The Commonwealth failed to establish the corpus delicti.

*John S. Robb, Jr.,* with him *William LeGoullon,* for appellants.—The omission of the word "fair" was improper: Com. v. Palmer, 222 Pa. 299.

The court gave the impression to the jury that the testimony of the defendants was of little weight, if not altogether unreliable: Gœrsen v. Com., 99 Pa. 400; Com. v. Meads, 29 Pa. Superior Ct. 330; Minick v. Gring, 1 Pa. Superior Ct. 484; Com. v. Colandro, 231 Pa. 343; Com. v. Goldberg, 4 Pa. Superior Ct. 153.

The court erred in its charge to the jury in failing to instruct the jury as to the presumption of innocence of the defendants: Com. v. Greene, 227 Pa. 86.

In inserting the words "black-hand demand for money" in the charge it has placed heavier demands upon defendants than are required of them.

*Harry A. Estep,* Assistant District Attorney, with him
*Harry H. Rowand,* District Attorney, for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 4,
1919:

Charles Russogulo, Joseph Russogulo, Jack Guasta-
ferra and Angelo Guastaferra were tried together for un-
lawfully slaying one John Cappa, in the City of Pitts-
burgh, on May 2, 1917. The first three defendants were
found guilty of murder of the first degree, while the last
escaped with a conviction of second degree; all of them
appeal from sentences on these verdicts. The assign-
ments of error are alike, and the four cases will be dis-
posed of as one.

After carefully reading the 389 pages of printed testi-
mony, we agree with the court below that the verdicts are
sustained by the "overwhelming" preponderance of evi-
dence; therefore the only questions with which we have
to deal concern alleged trial errors and the propriety of
the refusal to grant a retrial because of so-called after-
discovered evidence.

The first two assignments are simply to the entry of
the several sentences, or judgments, against the respec-
tive defendants; they require no special discussion.

The third assignment complains that the trial judge
omitted the word "fair" before the word "preponder-
ance," in charging that "the burden rests upon a defend-
ant, alleging self-defense, to establish it by the prepon-
derance of the evidence." Although the phrase "a fair
preponderance" is to be found in some of our cases deal-
ing with the subject of the burden of establishing an af-
firmative defense, yet, in other instances, we speak sim-
ply of "a preponderance" or "a preponderating amount
of evidence" (see Com. v. Palmer, 222 Pa. 299, 301;
Com. v. Simanowicz, 242 Pa. 402, 405; Com. v. Lee, 233
Pa. 16, 17). With us either expression is correct; but,
in some jurisdictions, employment of the term "fair pre-

ponderance" has been complained of as placing a greater burden upon one carrying the affirmative of an issue than if "preponderance" were used without qualification: 6 Words and Phrases, 1st series, 5516-17; also 2 id. 2d series, 439. In other words, complaint has been made most frequently against the use of any qualification, such as "fair," in connection with the word "preponderance." We see no merit in the present assignment.

The next criticism (fourth assignment of error) is that the trial judge erred in his charge to the jury "in prominently presenting the theory and strong features of the prosecution, while ignoring those of the defendants, and in failing to present, as a connected whole, the case of the defendants with the law applicable thereto." This assignment might be dismissed for not quoting the charge as required by our Rule 27. The rule is of practical importance, for, since the specifications of error are all that remain with us after the return of the record to the court below, it is essential to have them in proper form, so as to show hereafter precisely what alleged errors were ruled upon. We have read the charge, however, and are not convinced of substantial error; so far as its general adequacy is concerned, it comes within the requirements recently stated by us in Com. v. Colandro, 231 Pa. 343, 356.

In the trial judge's instructions to the jury, he first calls attention to the fact that John Cappa was killed by one or more of the defendants (which was fully established by the evidence); next, he notices the general contentions of the Commonwealth that the killing was a deliberate and premeditated murder, and, of the other side, that it was done in self-defense by two of the prisoners, the others having no actual part in it; then he instructs correctly upon the various degrees of homicide, carefully describing and defining them, as also upon the law of self-defense and the theory of reasonable doubt; after this the following general, but fair and cor-

rect, summary of the respective contentions is given: "The story of the defendants is substantially that Cappa was a dangerous man, feared by the defendants, had frequently demanded $400 and threatened to kill them or blow up their home; that on the 2d of May Cappa and [one] Lapaglia passed along Reedsdale street [where defendants resided], Cappa stopping [before defendants' house] and demanding money, and, being refused, he and Lapaglia pulled out revolvers and fired many shots, and that Charles and Joseph Russogulo shot in self-defense; that Angelo [Guastaferra], the father, and Jack, his son, had no part in this shooting, nor in any way aided or abetted it, and that no shots were fired from the second-story window. The story of the Commonwealth is, substantially, that Cappa and Lapaglia passed the house, bidding the time of day to Charles, Joe and Jack [three of the defendants above named], sitting on the steps, and......passing on a few yards, the three men [defendants] opened fire, and Cappa wheeled around and fell. Lapaglia continued, running across the street with Jack following and firing at him, Lapaglia being wounded in five or six places on his body and some shots passing through his hat; that Cappa and Lapaglia had no revolvers and fired no shots, and that all four defendants joined and participated in the shooting, numerous shots being fired, some of them from a shotgun fired by Angelo, the father, from a second-story window."

At the conclusion of the trial judge's summing up of the stories told by the witnesses for either side, as just quoted, several persons called by the prosecution were named and their testimony briefly referred to. One of appellant's chief complaints is that no specific reference was made in the charge to the witnesses called by them; upon this subject, the court below, in its opinion on the motion for a new trial, states: "True, there was a slight reference in the charge to some of the testimony of some of the Commonwealth's witnesses—a very brief refer-

ence, because the names of the defendants, as alleged joint participants in the killing, were referred to over and over again......during the trial, while the names of the Commonwealth's witnesses were less known to the jury and not so easily remembered." We are not impressed that there is any merit in the complaint under consideration. In Com. v. Colandro, supra, we say, "The manner in which the evidence shall be dealt with [by the trial judge] must of necessity depend upon the circumstances in each case, and to a degree upon the line of argument pursued by counsel in addressing the jury;" and, in Com. v. Keller, 191 Pa. 122, 132, that, "in the absence of a request for more specific instructions," the charge will not be held to be inadequate, albeit the evidence on one side might properly have been more fully referred to: see also Com. v. Washington, 202 Pa. 148, 153, Com. v. Caraffa, 222 Pa. 297, 298; Com. v. Pacito, 229 Pa. 328, 334, and Com. v. Payne, 242 Pa. 394, 402.

Finally the jurors were plainly instructed that if they believed the testimony relied upon by the prisoners or any of them, they should acquit; or, on the testimony as a whole, they could find one or all defendants guilty of only manslaughter or second-degree murder; and the circumstances under which those lower degrees' of homicide would apply, as they might find the facts, were intelligently put before the jurors. On the other hand, they were told that, if they believed the testimony produced by the Commonwealth, and the latter had proved its case beyond a reasonable doubt, they should fix the degree of crime at whatever they might determine it to be— "first-degree, or second degree or voluntary manslaughter ......, on a careful and conscientious weighing of the testimony." We do not feel at all convinced the charge was either one-sided or prejudicial to the defendants; it amply meets the requirements of the law, as stated in the cases already cited; the assignment in hand will not be sustained.

The fifth assignment complains of the trial judge's instructions upon the effect to be given to evidence of good character; but counsel quotes only an excerpt from the particular part of the charge in question. When the matter called to our attention is taken with its context, it is in accord with the law as we have laid it down in numerous cases. This assignment is entirely without merit, and requires no further consideration.

The sixth assignment criticizes the charge on the score that it fails to explain sufficiently either "the essential elements of the crime of murder" or give the common law definition thereof. We see nothing in the last criticism and have already discussed the first in connection with the fourth specification of error.

The seventh assignment complains of a failure "to instruct the jury as to the presumption of innocence of defendants." In dealing with this phase of the case, the court below says: "The failure of the trial judge, in express words, to state this presumption was an unintentional slip—oversight—easily corrected had defendants' counsel directed the court's attention to it before the jury retired (Com. v. Razmus, 210 Pa. at p. 611), or thereafter, prior to the rendition of the verdict; and their failure of duty, by sitting idly by, should not be used to convict the court of reversible error.......Com. v. Caraffa, 222 Pa. 297, 298......In State v. Kennedy, 154 Missouri 268, 288, GANTT, P. J., said: 'No doubt ......can longer exist that the presumption of innocence is indulged in favor of every person charged with crime, and that his guilt must be established beyond a reasonable doubt; but the question is, if the court properly and fully instructs the jury on reasonable doubt, will its failure to instruct......that the defendant is presumed to be innocent until his guilt is established, constitute reversible error in and of itself?......In Michigan [People v. Graney, 91 Mich. 646] it has been ruled error to refuse such instruction when asked, but that a failure to give it, when not prayed, was not error.

·......The Court of Appeals of Kentucky, in Stevens v. Com., 45 S. W. 76, held, just as the Ohio court did [Morehead v. State, 34 Ohio 212] that, while the presumption of innocence might have properly been stated to the jury, he [the defendant] had its full practical benefit in the instruction that his guilt must be proved beyond a reasonable doubt. While it is now usual, and, we think, the proper course, to instruct the jury that the law presumes the innocence of the defendant......, yet, when the court has, as in this case, fully instructed in his favor on the doctrine of reasonable doubt...... we do not think the sentence should be reversed solely for the failure to state that presumption.' " These views were properly applied in the present case. In addition to the authorities already cited, see note to 12 Cyc. 622, where other cases are listed, which hold that an "omission" specifically to instruct upon the presumption of innocence is "cured by a charge as to the reasonable doubt," and Com. v. Holgate, 63 Pa. Superior Ct. 246, 256, where the subject in hand is fully discussed, with quotations from Wigmore and other distinguished writers supporting the ruling we are about to make on the present assignment.

Here the jurors were repeatedly told the burden was upon the Commonwealth to prove its case, and every element thereof, beyond a reasonable doubt; which was the essential thing for them to know. The rule that a prisoner is always entitled to the benefit of any reasonable doubt, results "from the well-established principle that the presumption of innocence is to stand until it is overcome by proof" of a quality to carry that degree of conviction: 8 R. C. L. 170. In other words, the presumption of innocence is the reason which gives rise to, and forms the basis of, the rule as to reasonable doubt; or, as stated in 16 Corpus Juris 535, par. 1007, "its [the doctrine of the presumption of innocence]......function is to cast upon the state the burden of proving the guilt of the accused beyond all reasonable doubt."

Hence, when the rule itself is properly put before the jury, in the absence of a specific request to charge further upon the subject, an omission to state the underlying principle should not, ex necessitate, be counted reversible error. Cases may arise where, considering the evidence and the charge as a whole, a failure to instruct specifically on the presumption of innocence would be materially harmful to the defendant, and constitute reversible error, but the present one is not of that character.

The eighth assignment complains of a part of the charge wherein the trial judge instructed the jury that, where one is killed by a wound in a vital part, administered through a deadly weapon, "no words of profanity, reproach, or abuse or slight assault, are provocations sufficient to free the party killing from the guilt of murder"; that "the law imposes upon everyone the duty of keeping his passions under reasonable restraint, and, therefore, if one lash himself into a fury at some slight provocation, or without provocation, and without reasonable excuse, he cannot defend against murder because of such passion, nor can he, by the recollection of some past injury or insult or black-hand demand for money, work himself into a heat over it, and so excuse himself; the act, to reduce the killing from murder to manslaughter, must be upon a sudden and sufficient provocation." These instructions were appropriate to the present case and in accord with the law as laid down in Com. v. Drum, 58 Pa. 9, 17, 18; Com. v. Paese, 220 Pa. 371, 374, and many other Pennsylvania authorities; see also 13 R. C. L. 795, par. 99.

The ninth assignment deals with an incident which occurred just before the jury retired. At the end of the charge, this oral request was made by counsel for defendants: "I will ask your honor to say to the jury that, if Joe, emerging suddenly from the house, believed his brother's life was in danger, he had the right to shoot;" to which the trial judge replied, "It would be at least

manslaughter"; and counsel for defendants responded, "It might be self-defense too"; whereupon the court said, "It might be self-defense as to all, but, if there was no self-defense at all at the start, it might reduce his crime to manslaughter. In other words, under these circumstances, you cannot kill a man without being an offender under the law." We see no error in these instructions.

The request, as phrased, would make "Joe's" right to an acquittal depend entirely upon his "belief" that "his brother's life was in danger," without regard to the reasonableness of that belief, or whether or not it was carelessly adopted; or whether or not his brother was, to "Joe's" knowledge, the aggressor, who had engaged in an unlawful and cold-blooded attempt to kill John Cappa, as contended by the Commonwealth. It also fails to consider the necessity for "Joe" to use a deadly weapon upon his brother's alleged assailant, in order to protect the former.

The general rule of law is "a bona fide belief by the defendant that a felony is in process of commission, which can only be averted by the death of the supposed felon, makes the killing excusable homicide; though, if such belief be negligently adopted by the defendant, then the killing is manslaughter": Wharton on Homicide, par. 533. With reference to this rule, we said in Com. v. Paese, supra, at p. 378, that "reliance must be had on the ancient and settled right to interfere to prevent felony, with its well-guarded limitations [however] that the injury to be prevented must be serious, must be imminent and not past, the quarrel in actual progress, and the necessity for the use of a deadly weapon clear of doubt." We likewise held in the case just referred to that a "mere bystander" may not interfere in a stranger's quarrel, to the extent of killing with a deadly weapon, "without being guilty of more than manslaughter," and that the more generous rule, applicable when the interference is to protect a near relation, did not,

in Pennsylvania, extend beyond cases where a serious injury was threatened to a "wife or husband, child or servant." Finally, it is established that "to warrant taking life in self-defense there must be a reasonable ground for belief, upon the part of the slayer, that he is in imminent danger of loss of his own life or of suffering serious bodily harm, at the hands of the person killed" (13 R. C. L. 816; Com. v. Colandro, supra, at p. 352); that, "in so far as the right to take human life is dependent upon the surrounding circumstances, persons acting in defense of others are in the same situation, and upon the same plane, as those who act in defense of themselves" (13 R. C. L. 837, par. 140); and, "if it appear that the accused knew that the person defended had been the aggressor, he is not excusable for his homicidal act" (13 R. C. L. 839, par. 142). See also 21 Cyc. 827, par. 2.

Here it is to be remembered the defendants contended, and testified, that John Cappa and his companion, Lapaglia, had actually opened fire upon them, and that they returned the shots only for self-protection; while the Commonwealth claimed, and produced witnesses to prove, that the deceased and Lapaglia were, without any apparent reason, shot at by all four defendants. It was for the jury to find the facts from all the evidence in the case (Com. v. Colandro, supra, p. 350), and they might have believed that, "when Joe emerged suddenly from the house," he knew his brother was then engaged in an attempt to murder Cappa and his companion, and, further, that Joe thought the man under attack might at any moment return the assault in kind, and, for this reason alone, his brother's life was in danger. The request, as put, would fit such a state of affairs; and the killing, under these circumstances, would be murder, not manslaughter: Com. v. Paese, supra. Hence, on the whole, the reply of the trial judge was more favorable to the defendant, "Joe," than he deserved. At any rate, it is clear that no harm

was done to the defendant in question by the instruction complained of, for it merely amounted to this: If the defendants were not acting in self-defense, then, on the facts stated in the point (see Com. v. Paese, supra, p. 374), "Joe" would be guilty of manslaughter, and would not be entitled to complete acquittal. Had the jury found "Joe" guilty of manslaughter, he might, in that event, have contended, with some show of reason, that, if the instructions complained of had not been given as they were, he would have had a chance of acquittal; but, since he was convicted of murder in the first degree, it is apparent that, right or wrong in law, the instructions under consideration did him no material harm.

The tenth assignment states "the court erred when it refused to grant a new trial upon after-discovered evidence," without more. This assignment is defective in failing to set forth the alleged evidence. We have looked at the affidavits printed in the paper book, however, and do not feel that the so-called after-discovered evidence is technically such, for it was available to the defendants at the time of the last trial; nor do we feel that, if introduced at a retrial, it would, in any probability, bring about a different verdict. Under the law as recently laid down by us in Com. v. De Felippis, 245 Pa. 612, and Com. v. Delfino, 259 Pa. 272, 280, no error was committed in the present case by the refusal to grant a new trial.

The eleventh and last assignment complains that "the Commonwealth failed to establish the corpus delicti." There is absolutely no merit in this objection. In the first place, Joseph Russogul[o] testified, "I shot him [John Cappa]"; then, it was shown by three of the defendants that, after being shot the deceased fell in his tracks; next, the policeman who picked him up, testified that, while alive when placed in the patrol wagon, Cappa died, in the former's presence, before reaching the hospital; and, finally, the coroner's physi-

cian testified that he had performed an autopsy upon the body of a man, identified to him as John Cappa, and that this man had died from pistol-shot wounds, describing them.  If counsel for the defendants desired the last-mentioned witnesses to state exactly how the body of the deceased had been identified, it was their duty to raise that objection at the trial.

As stated in the beginning of this already too lengthy opinion, a reading of the testimony is convincing that the jury were entirely justified in finding all four defendants participated in the actual shooting of John Cappa, and that the killing of the latter was an inexcusable cold-blooded murder.  Angelo Guastaferra is fortunate that he, too, was not convicted of murder of the first degree; none of the defendants can properly complain of the trial.

The assignments of error are all overruled, the judgments are affirmed, and the record is remitted to the court below for purposes of execution.