Commonwealth *v.* Gray, Appellant.

92

Argued April 30, 1970. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

reargument refused December 23, 1970.

*Melvin E. Caine*, with him *Caine, Di Pasqua, Edelson & Patterson*, for appellant.

*Vram Nedurian, Jr.,* Assistant District Attorney, with him *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, November 12, 1970:

Alvin C. Gray, appellant, and one John Stephens were indicted in Delaware County for murder, voluntary manslaughter and conspiracy in connection with the fatal stabbing of Emanuel Brown on January 12, 1969, in Darby Township, Delaware County, Pennsylvania. Each was tried separately and Stephens, who was tried first, was acquitted of all charges. Thereafter, the trial of Gray commenced, with the jury ultimately rendering a verdict of guilty of second degree murder.[1] Motions in arrest of judgment and for a new trial was made and denied by order of court filed November 24, 1969. Gray was sentenced on December 5, 1969, to a term of seven and one-half to fifteen years' imprisonment. This appeal followed.

While the testimony of the various witnesses was contradictory, it appears to us that on the fatal date the appellant and Stephens were wandering on "foreign turf." They were met by decedent Brown and a Milton Gans and words were exchanged. Subsequently, ten to thirteen boys, led by the victim, began to chase and throw bricks at Gray and Stephens. Eventually, a hand-to-hand encounter ensued between the victim and Stephens. According to appellant's testimony, he later joined the fray and succeeded only in punching the victim while being knocked unconscious by a brick and waking up some distance away.

In support of his alternative motions, appellant advances six contentions: (1) the evidence was insufficient to sustain the verdict of second-degree murder;

---

[1] Gray was found not guilty of voluntary manslaughter and a directed verdict of not guilty of conspiracy was entered.

(2) it was error for the trial judge to refuse to charge on self-defense or defense of another; (3) the trial judge placed undue emphasis upon the definition of the various degrees of murder, thereby prejudicing appellant; (4) it was error for the trial judge to refuse to charge that the previous acquittal of Stephens was evidence sufficient to impeach the credibility of an eyewitness; (5) the trial judge erred in ordering the closing argument to be made *first* by the appellant without a later opportunity to rebut the Commonwealth's later closing argument; and (6) the prosecutor should have been directed to call an eyewitness. The additional facts necessary for a complete understanding of these issues will be developed in this opinion.

In support of his first contention, appellant basically argues that the inconsistencies and variances among the Commonwealth's witnesses as to specific details demonstrate the insufficiency of the evidence upon which the conviction was based. However, variances in testimony or the fact that witnesses may have made contradictory statements goes to credibility and not to sufficiency. *Com. v. Osborne*, 433 Pa. 297, 249 A. 2d 330 (1969). "[I]n determining the sufficiency of the evidence, be it direct or circumstantial, the test is whether, accepting as true all of the evidence and all reasonable inferences arising therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted: Com. v. Commander, 436 Pa. 532, 260 A. 2d 773 (1970)." *Com. v. Myers,* 439 Pa. 381, 383-84, 266 A. 2d 756 (1970). *Accord, Com. v. Winebrenner,* 439 Pa. 73, 265 A. 2d 108 (1970). Of course, the record must be considered and read in the light most favorable to the Commonwealth.

At trial, both Gray and Stephens unequivocally denied doing the stabbing and denied any possession of a

knife. On the other hand, while there was conflicting testimony by the Commonwealth's witnesses as to whether Stephens or Gray stabbed the victim, all agreed that Gray did have a knife. In any event, it was not necessary, under the circumstances, for the Commonwealth to offer proof which would exclude the possibility that Stephens alone committed the fatal stabbing in order to prove Gray's guilt beyond a reasonable doubt. *Com. v. Kravitz*, 400 Pa. 198, 161 A. 2d 861 (1960). Viewing all the evidence presented, the jury could find not only that Gray stabbed the victim but also that he did so maliciously. *Cf. Com. v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108 (1970); *Com. v. Commander*, 436 Pa. 532, 260 A. 2d 773 (1970). Read in the light most favorable to the Commonwealth, we find the evidence sufficient to support a conviction of murder in the second degree.

Secondly, appellant alleges it was error for the trial judge to refuse to instruct on self-defense or defense of another. "The following conditions must be satisfied before one can successfully invoke the defense of self-defense: 17 P.L.E. Homicide §§45, 46; C.J.S. Homicide §114. (1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing: Commonwealth v. Minoff, 363 Pa. 287, 69 A. 2d 145 (1949). (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom: Commonwealth v. Collazo, 407 Pa. 494, 180 A. 2d 903 (1962); Commonwealth v. Miller, 313 Pa. 567, 170 A. 128 (1934); Commonwealth v. Russogulo, 263 Pa. 93, 106 A. 180 (1919). (3) The slayer must not have violated any duty to retreat or avoid the danger: Commonwealth v. Collazo, supra; Commonwealth v. Johnson, 213 Pa. 432, 62 A. 1064 (1906); Common-

wealth v. Breyessee [160 Pa. 451, 28 A. 824 (1894)]."
*Commonwealth v. Johnston,* 438 Pa. 485, 489, 263 A.
2d 376, 379 (1970). Although the case law is scant,
this Court has recognized the limited doctrine of de-
fense of another. *See Com. v. Russogulo,* 263 Pa. 93,
106-07, 106 A. 180, 185-86 (1919).

However, it is irrelevant whether the accused fits
within either of these categories for it must be remem-
bered that the appellant *steadfastly denied* in his tes-
timony that he stabbed the victim. In *Com. v. Pavil-
lard,* 421 Pa. 571, 220 A. 2d 807 (1966), error was al-
leged in the trial judge's refusal to charge the jury on
the law regarding homicide by misadventure (mistake)
even though the accused denied any complicity in the
homicide. To paraphrase the language of the *Pavillard*
opinion, appellant's testimony as to the victim's death,
if believed, would establish that someone else stabbed
the victim. The Commonwealth's evidence, if believed,
shows a homicide committed by Gray. The issues of
self-defense or defense of another were not injected in-
to this case at trial by either the Commonwealth or the
appellant. That being so, the failure to charge upon
the subject was not error. 421 Pa. at 574, 220 A. 2d
at 809.[2] An analogous result was reached by the Su-
perior Court as to the privilege to eject trespassers
when that right was not relied on by the accused. *Com.
v. Zubik,* 194 Pa. Superior Ct. 248, 166 A. 2d 666
(1960). There is no reason in this particular situation
to distinguish the doctrines of self-defense and defense
of another from those of homicide by misadventure and

---

[2] While we said in *Com. v. Beach,* 438 Pa. 37, 40, 264 A. 2d 712,
714 (1970): "In a case where there is any evidence which might
lead a jury to conclude that a killing occurred through legal mis-
adventure, a charge as to the applicable law is essential," that case
is clearly inapposite as the accused there testified that a struggle
between him and another resulted in the stabbing of a third per-
son.

the privilege to eject trespassers when the accused does not avail himself of these defenses. "Where the defense is that the accused did not kill or participate in the homicide, instruction on self-defense is not necessary." 41 C.J.S. *Homicide* §379 n. 16 (1944).

Moreover, we have repeatedly held that self-defense is an affirmative defense and that the accused has the burden of proving it by a fair preponderance of the evidence. *Com. v. Winebrenner*, 439 Pa. 73, 265 A. 2d 108 (1970); *Com. v. Johnston*, 438 Pa. 485, 263 A. 2d 376 (1970); *Com. v. Commander*, 436 Pa. 532, 260 A. 2d 773 (1970). Since Gray has *specifically denied* the stabbing, he certainly could not sustain this burden and thereby avail himself of this defense. Accordingly, the refusal to so charge was not error.

Appellant next argues that the trial judge placed undue emphasis upon the definition of the various degrees of homicide to the prejudice of the accused. Our reading of the record demonstrates that the trial judge initially defined the categories of homicide (ten pages of the record) followed by a review of the evidence (twenty-seven pages of the record). A brief reiteration of hornbook law on the degrees of homicide (one page of the record), along with a reminder of the presumption of innocence, then concluded the charge. It is this brief reiteration of the law involved which allegedly prejudiced the appellant, prompting counsel's objection.[3] Viewing the charge as a whole, we cannot conclude there was undue emphasis engendering any prejudice whatsoever.

Since Stephens had been acquitted earlier, counsel for the appellant requested the trial judge to charge that this acquittal was evidence sufficient to impeach

---

[3] Upon being informed of this objection at side-bar, the trial judge responded, "You're objecting to that?"

the credibility of the eyewitness.[4]  Appellant's basis for this argument is certain language in *Com. v. Quaranta*, 295 Pa. 264, 271, 145 A. 89, 92 (1928): "Furthermore, the fact of acquittal of a witness [two co-defendants had been acquitted earlier], as shown by verdict and judgment, is competent proof to affect the credibility of eyewitnesses who have testified to witness's presence at the homicide and participation therein." We certainly agree that the acquittal is *competent* proof to *affect* the credibility; but this language should not be interpreted, as appellant apparently desires, to achieve a result that would require the trial judge to essentially direct the jury to disregard the testimony of the eyewitnesses. The possible bases upon which Stephens was acquitted are myriad. Indeed, Stephens may have been acquitted because his jury *may* have decided that Gray was the guilty party. There is no merit in this contention.

Pa. R. Crim. P. 1116(b) provides: "When the evidence is concluded, each party shall be entitled to present *one* closing argument to the jury. Regardless of the number of defendants, and whether or not a defendant has presented a defense, the attorney for the Commonwealth shall be entitled to make *one* argument *which shall be made last.*" (Emphasis added) Notwithstanding Pa. R. Crim. P. 1116(b), counsel for appel-

---

[4] Refusing this request, the court intead charged: "When Stephens testified and he said on the witness stand that he was acquitted in a prior trial where he gave the same testimony as to himself in that case. This, the fact of an acquittal, is not substantive evidence of this defendant, Gray's guilt or innocence in this case, it only relates to the credibility of the witness, Stephens. It is an indication that he would have no interest for himself in the outcome of the case, but in considering Stephens' testimony as a whole, you will nevertheless apply what I have said regarding this at this point along with the other tests of credibility which I have just outlined to you in determining his credibility."

lant moved the Court to direct that the order of closing arguments should be as follows: the Commonwealth should make the first opening summation to the jury to be followed by the defense; this speech was to be followed by the final argument of the prosecution, which speech should be limited to a rebuttal of the defense speech only. The trial judge ordered the closing arguments to be made in accord with Pa. R. Crim. P. 1116(b) and the defense now alleges the invalidity of that rule.

In support of this motion, appellant cites the practice of several jurisdictions. With all due deference to these other jurisdictions, such procedure is not employed in this Commonwealth. While this Court long ago recognized that the denial of the right of summation by counsel to a criminal jury was an abridgment of the accused's constitutional right to full representation by counsel, *Stewart v. Com.*, 117 Pa. 378, 11 A. 370 (1887), it nowise follows that the same deprivation occurs involving the order of summation.[5]

Appellant lastly argues that the prosecution should have been directed to call the victim's father, an eyewitness, to testify as a Commonwealth witness. At the trial of John Stephens, Mr. William Brown testified that Stephens, with something in his hand, was on top of the victim and, as Stephens stepped away, the victim staggered away from Stephens. At the closing of the prosecution's case, the district attorney stated he did not intend to call Mr. William Brown whereupon the defense requested a bench warrant for Mr. Brown in order to call him. The defense, however, did not call Mr. Brown; nor was a request made to re-open the case to permit his testimony in defense. "Pennsylvania decisions have long recognized that in criminal tri-

[5] *See generally*, Annot., 38 A.L.R. 2d 1396 (1954), as supplemented.

als the prosecution is not absolutely bound to call to the stand all available and material eyewitnesses. Commonwealth ex rel. Sprangle v. Maroney, 423 Pa. 589, 225 A. 2d 236 (1967); Commonwealth v. Horn, 395 Pa. 585, 150 A. 2d 872 (1959); Commonwealth v. Palermo, 368 Pa. 28, 81 A. 2d 540 (1951); Commonwealth v. Deitrick, 221 Pa. 7, 70 Atl. 275 (1908). [Footnote omitted]. On the other hand, a number of decisions clearly indicate that when the Commonwealth does not call to the stand such an eyewitness, it must apprise the defense of the witness's name and whereabouts at trial, unless the defense is able or should have been able to procure the witness unaided. Commonwealth v. Giacobbe, 341 Pa. 187, 19 A. 2d 71 (1941); Commonwealth v. Karamarkovic, 218 Pa. 405, 67 Atl. 650 (1907); Commonwealth v. Danz, 211 Pa. 507, 522, 60 Atl. 1070, 1075 (1905). [Footnote omitted.]" *Com. v. Carter*, 427 Pa. 53, 54-55, 233 A. 2d 284, 285 (1967). *See also, Com. v. Schmidt*, 437 Pa. 563, 263 A. 2d 382 (1970). It was alleged in the Commonwealth's brief and not denied by the appellant that Mr. Brown was intermittently present at trial. Moreover, the witness was under subpoena, his identity disclosed to the defense, and he was available to the defense upon the issuance, at its request, of a bench warrant. Thus, Mr. Brown was available to the defense attorney and, if he wanted him, all he had to do was call him. There is no error.

Judgment of sentence affirmed.

----

DISSENTING OPINION BY MR. JUSTICE EAGEN:

In good conscience I must dissent.

The trial court rejected a specific request by defense counsel to instruct the jury on the law of self-defense. In my view such an instruction was required

under the proof in the case, and the refusal of the court to so charge is such error as to require a new trial.

To substantiate my conclusion, it is necessary to refer to Gray's own trial testimony. His testimony may be summarized as follows:

On the date involved, Gray and John Stephens traveled from their home town of Chester to the Sharon Hill section of Darby Township, Delaware County, to visit a cousin of Stephens. The cousin was not at home, so they proceeded in the direction of the residence of a girl friend. As they walked south on Ash Street, they were accosted by twelve to fifteen members of the "alley gang" led by Brown, who started to pursue them and threw pieces of brick at them. Stephens and Gray walked, sometimes backwards, to a nearby police station, but found it locked since it was Sunday. Some of the pursuers then started to "move in" on Stephens and others on Gray. At this time, Stephens and Gray were standing several feet apart from each other. Gray grabbed two pieces of brick thrown at them, but one of the members of the gang pointed a gun at him and told him to drop them. Gray urged Stephens to run, because "there was too many of them." Gray then started to run, but was called back by Stephens. A brick then hit Gray in the area of the left ear and knocked him down. After a short interval of darkness, he looked up and saw some of the gang "trying to get Stephens" and Brown with "a hold" on Stephens. Gray was in fear of his life, as well as that of Stephens, and "went back . . . to fight . . . for both of our lives" and "to help free Stephens . . . so he could run." He hit Brown with both hands and backed away. He then yelled to Stephens "to come on" but Stephens said "he will give it a go or try", and he hit Brown and knocked him down. Gray again yelled to Stephens to "come on", and the "guy" with the gun waved it in

his face. One in the gang near him had a razor in his hand and still another a stick or rod. The "guy" with the gun grabbed the stick and hit Gray with it and knocked him down. When he got up, Brown "stumbled past" and lay on the nearby grass.[1] Gray said he did not have a knife or stab Brown.

While Gray denied stabbing Brown, this was only a portion of his testimony, and the credibility of the testimony *in its entirety* was for the jury. And, as we have said in a multitude of decisions and as recently as April 22, 1970, in *Commonwealth v. Ewing*, 439 Pa. 88, 264 A. 2d 661 (1970), a jury may reject one part óf a defendant's testimony and still believe another portion thereof. Given the fact that the jury disbelieved Gray's denial that he stabbed Brown, as the verdict indicates, it could still believe the remaining portion of his testimony, and if this testimony was sufficient to establish the possibility that the stabbing was committed in a legitimate act of self-defense, as I conclude it was, then the issue was for the jury under proper instructions from the court. In other words, if there was any testimony which might lead the jury to conclude that the stabbing occurred in a legitimate act of self-defense, the court was obliged to submit the issue to the jury. Cf. *Commonwealth v. Beach*, 438 Pa. 37, 264 A. 2d 712 (1970). The trial court by ruling out the issue of self-defense thereby limited the jury to passing on the credibility of Gray's testimony that he did not stab Brown and denied the jury its right to resolve the truthfulness of the remaining portion of his

---

[1] Since the police arrived apparently immediately after the stabbing of Brown, it is not clear what action the remaining members of the gang might have taken against Gray and Stephens or how serious a threat they were to the lives of Gray and Stephens. This would have to be evaluated by the jury. After the police arrived, Gray was taken to the hospital where several sutures were necessary to close a wound in his scalp.

testimony. This is violative of our decision in *Ewing,* *supra,* and many prior cases.

In *Commonwealth v. Johnston,* 438 Pa. 485, 263 A. 2d 376 (1970), we recently reiterated the conditions which must be satisfied to successfully invoke the defense of self-defense where the slayer kills in order to save himself from death or great bodily harm.

"As a general proposition, a person is justified or excused in killing in defense of another person when, and only when, the circumstances are such that the latter person would be justified or excused if he had committed the homicide in his own defense. A person interfering in a difficulty in behalf of another simply steps in the latter's shoes; he may lawfully do in another's defense what such other might do in his own defense but no more; he stands on the same plane, is entitled to the same rights, and is subject to the same conditions, limitations, and responsibilities as the person defended; and his act must receive the same construction as the act of the person defended would receive if the homicide had been committed by him. This rule may be subject to qualification based on accused's lack of knowledge of the facts and circumstances; but in general it is necessary and sufficient to justify or excuse a homicide in defense of another that neither the person defended nor the defender shall be at fault in bringing on the difficulty, or that, if he has provoked the attack, he shall in good faith withdraw from the combat before the killing; that the danger, real or apparent, to the person defended shall be of death, great bodily harm, or a felony; that it shall be present, imminent, and impending, and not a past danger; that either the person defended shall be in real danger of death, great bodily harm, or some felony at the time, or it shall be reasonably apparent to the slayer, or he shall honestly and reasonably believe, that the person

defended is in such danger, and that it is necessary to kill to save him therefrom; that the person defended shall retreat if he can do so without increasing his peril; that neither the person defended nor accused could have averted the apparent danger by any reasonably safe means other than the killing of deceased; and that the defender shall not use more force than is necessary or reasonably appears to him to be necessary to save the person defended from death or great bodily harm." 40 C.J.S. Homicide §108, at 968-969 (1944). See *Commonwealth v. Russogulo*, 263 Pa. 93, 106 A. 180 (1919).[2]

In applying these two doctrines in conjunction with one another, the accused in going to the defense of another under all the conditions set forth above does not automatically forfeit the right to assert the defense of self-defense because he failed to retreat or did thrust himself into the difficulty. It is his right to go to the defense of another in the proper circumstances, and he, therefore, has no duty initially to retreat nor does he necessarily provoke the difficulty thereby.[3] Cf. *Commonwealth v. Johnston*, supra.

In this case, if Gray had a reasonably founded belief that Stephens was in imminent peril of death or great bodily harm, and it was necessary to kill Brown to save Stephens therefrom, he had the right to take Brown's life on Stephen's behalf, and in determining the existence or nonexistence of such a reasonable be-

---

[2] In certain situations, when all these conditions are not satisfied so as to entitle an accused to acquittal, the crime may be reduced to voluntary manslaughter. See *Commonwealth v. Paese*, 220 Pa. 371, 69 A. 891 (1908).

[3] For example, if A goes to the defense of B from an attack by C under the circumstances set forth above, and in so doing endangers his own life from another assailant, D, a cohort of C, A may assert his right of self-defense in killing D if he satisfies the other requirements of *Commonwealth v. Johnston*, supra.

lief, the attending circumstances must be viewed as seen through Gray's eyes. In this case, although the struggle with Brown, as described, taken in isolation, would not have warranted, as a matter of law, a reasonable belief that Stephen's life was in imminent danger or justified the taking of Brown's life, taking the totality of the circumstances and realizing that Brown was but one of a hostile and armed gang of twelve or fifteen, the evidence, if believed, was sufficient to warrant a jury in finding not only that one in Gray's situation could reasonably believe it necessary to take Brown's life to preserve that of Stephens, but they could also find that, since Brown was the most immediate obstacle to the flight of Stephens and therefore Gray, Gray may have reasonably believed it essential to take Brown's life to enable himself (Gray) to flee and thus preserve his own life as well.

By this opinion I indicate no view on the credibility of Gray's testimony or the merit of the issue that he stabbed Brown in an act of self-defense, but merely say that these questions were for the jury to resolve under proper and adequate instructions.

Mr. Justice ROBERTS joins in this dissent.