## Commonwealth v. Meeks.

*Criminal law and procedure — Jurors — Prejudice—General racial prejudice.*

1. A juror is not disqualified, on the trial of a Negro defendant, by reason of a general prejudice against the race, if he answers upon his *voir dire* that he would not have bias or prejudice against the defendant because of his race or color.

2. The defendant was convicted of murder in the second degree. Upon a motion for new trial it was made to appear that one of the jurors, being examined in another case a few days before this case was called, had stated that he was prejudiced against the Negro race. In the present case he stated that he would not have bias or prejudice against the defendant because of his race or color: *Held,* that there being no other evidence of bias or prejudice against the defendant, this reason was not of itself sufficient to require a new trial.

*Criminal law—Homicide—Self-defence—Defence of a near relative.*

3. Where one person interferes in behalf of another who was the aggressor in a fight, and there is opportunity to retreat after the interference, and advantage is not taken of it, the person interfering can claim no greater right than the other, and neither can invoke the doctrine of self-defence.

4. Defendant having gone to the assistance of his brother, can claim no greater right than the brother, and if the brother was at fault and had not retreated or attempted to retreat, the interference is not justifiable or excusable.

Motion for new trial. O. and T. Dauphin Co., Jan. Sess., 1922, No. 5.

*Oscar G. Wickersham,* for motion.

*Philip S. Moyer,* District Attorney, contra.

HARGEST, P. J., March 29, 1922.—The defendant was convicted of murder in the second degree. He made a motion for a new trial, assigning the usual reasons—that the verdict is against the weight of the evidence, the charge of the court and the law and the evidence.

Commonwealth *v.* Meeks.

We have carefully considered the charge and the evidence and are entirely satisfied that there was no error in submitting the case to the jury. There was evidence from which the jury might have convicted the defendant of murder in the first degree, of murder in the second degree, or of manslaughter. The court cannot substitute its judgment for that of the jury. Therefore, it would serve no good purpose to review this evidence. These general reasons do not require further discussion.

The fourth reason assigned is: "The verdict is not the verdict of an unprejudiced and unbiased jury. One of the jurors, it has been learned since the trial of this case, in a former case, heard only a day or two previous to the day this case was called, having sworn on his *voir dire* that he had prejudice against colored people, and when similarly sworn in this case testified that he had no prejudice."

In the case of Commonwealth *v.* Anthony Jenkins, called for trial before Judge Wickersham, Jan. 12, 1922, Elmer Hampton, a juror, having been examined as to other qualifications, was asked: "Q. Have you any prejudice against a person on account of race or color? A. Yes." In the case now before us the same juror was called, and, after being otherwise examined as to his qualifications, was asked: "Q. Would you have any bias or prejudice against this defendant because of his race or color? A. No." The juror was then accepted by both the Commonwealth and the defendant. It will be noted that in the first case the answer was impersonal; that the juror said that he might have a prejudice against a person on account of his race or color; but in the case before us, when the specific question was asked as to whether he would have any bias or prejudice against the defendant because of his race or color, he said, "No." Assuming that the juror thoroughly understood both questions, and giving these answers the fullest effect, both the defendants being colored men, the inference is that the juror entertained a prejudice against the race, generally speaking, but none against the accused. It has been settled that one should not be excluded from jury service merely because he does not think highly of the race to which the defendant belongs: Balbo *v.* People, 19 Hun (N. Y.), 424, affirmed in 80 N. Y. 484.

Where a juror said that he had prejudice against the nationality to which the defendant belonged, and that prejudice would be in his mind during the trial, but not hinder him in rendering a just verdict, and that he had no prejudice against the defendant individually, it was held that he was not disqualified: State *v.* Guidice, Ann. Cas., 1917 *C,* 1160, 170 Iowa, 731; 153 N. W. Repr. 336.

In State *v.* Brown (Mo.), 87 S. W. Repr. 519, it is held that one is not disqualified as a juror on the trial of a Negro because he admitted that he had some prejudice against the Negro race, but stated that he had no such bias or prejudice as would prevent him from impartially trying the case, it appearing from his examination that he had no prejudice against the defendant.

In Johnson *v.* The State, Ann. Cas., 1912 *B,* 965, 88 Neb. 565; 130 N. W. Repr. 282, it is held that "where it is shown on the *voir dire* examination of a juryman that he is a fair and conscientious man, and is in all other respects competent to serve as a juror, the mere fact that he has a feeling that the white race is superior to the colored race, of which the defendant is one, does not render him incompetent."

The jury was sent out at the adjournment of the court for the noon recess at 12.31 o'clock. The court was advised, some time before the meeting at 2 o'clock, that the jury was ready to report, and they did report immediately upon the assembling of the court at that hour. In view of the short time the

2 D. & C.

jury required for their deliberations, we are convinced that this juror did not contribute to that verdict through bias or prejudice, or exercise his bias or prejudice toward bringing such a verdict about. His fairness and qualifications in other respects are not questioned. The utmost that could be said for his answers, taking both cases together, is that while he might have some bias or prejudice against the Negro race, he had none against this defendant.

For the reasons above given and under the authorities above cited, we are convinced that the defendant was not prejudiced by this juror.

The remaining reason for a new trial is: "The learned court erred in refusing to instruct the jury, as requested at the close of the charge of the learned court, to wit, that the defendant ought to be judged as matters appeared to him at the time he shot the deceased, and that it could have made no difference whether the brother of the defendant was the aggressor in the trouble between him and the decedent." This reason is the outcome of what occurred at the close of the charge to the jury. Counsel for the defendant said: "Before the jury retire, the defendant desires to except to that part of your honor's charge wherein the court discussed the question as to whether or not John Meeks was the aggressor in the quarrel between him and the deceased. I am calling your honor's attention to this because I believe this to be the law." Counsel then read from Wharton on Homicide (page 773) as follows: "It has been held, however, that the amenability to the law of a person who, finding another engaged in an affray, goes to his aid and takes part in the conflict, depends upon his own acts and intent, and not upon the intent which actuates the person to whose aid he goes, he having no knowledge thereof."

The court thereupon replied: "Yes, we think that is the law as to an affray, but we do not think it applies to this case."

The same principle was applied in Biggs v. Com., 164 Ky. 223; 175 S. W. Repr. 379; Ann. Cas., 1916 A, 1096; 13 Ruling Case Law, Homicide, § 140.

Counsel again urged this authority on the argument of the motion for a new trial. The effect of it has been entirely misunderstood. The learned author does not mean to say that one engaged in an affray may take the matter into his own hands and commit homicide and then plead self-defence or justification. What he says is that, in such a situation, one who goes to the aid of another who is already engaged in an affray cannot hide behind the acts of such other person, but must be judged by his own acts in entering into the affray. It has no application whatever to the principle that where one goes to the defence of a near relative, his rights are subject to the same limitations as the right of self-defence. The rule to be applied where one goes to the defence of a near relative does not extend to the defence of a friend or companion, much less to a stranger, as in the case of an affray: Com. v. Paese, 220 Pa. 371.

That principle is well stated in Wharton on Homicide, 534, 535: "Where one person interferes in behalf of another, who was the aggressor, and there is opportunity to retreat after the interference, and advantage is not taken of it, the person interfering can claim no greater right than the other, and neither of them can invoke the doctrine of self-defence. Thus, if a son fight in defence of his father, his act in so doing will receive the same construction as that of the father. And if the latter was the aggressor in bringing on the difficulty, and could not plead self-defence, the same rule applies to the son. . . . Nor can one strike to relieve a brother from peril, unless the brother was free from fault in bringing on the difficulty which placed him in peril, and if a person in whose defence a brother engaged was in fault, and had not

Commonwealth *v.* Meeks.

retreated or attempted to retreat, the interference is not justifiable or excusable:" 13 Ruling Case Law, Homicide, §§ 139, 140 and 141; 21 Cyc., 826, 827.

We are convinced that there is no substantial reason shown in support of this motion.

The motion for a new trial is, therefore, overruled, and the District Attorney directed to move for judgment on the verdict.

From William Jenkins Wilcox, Harrisburg, Pa.