THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ARROYO RODRÍGUEZ, Defendant and Appellant.

No. 9649.   Argued January 19, 1943.—Decided February 19, 1943.

F. R. Aponte and M. Velázquez Flores for appellant. R. A. Gómez, Prosecuting Attorney (Fiscal), and Luis Negrón Fernández. Assistant Prosecuting Attorney, for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The District Attorney of Humacao accused José Arroyo Rodríguez of having killed with malice aforethought José Etanislao Fonseca on June 7, 1938, in Yabucoa, as a result of a wound which he inflicted on his neck with a "machete."

After the case was tried before a jury, the latter brought in a verdict of guilty of murder in the second degree and a new trial having been sought and refused, the court rendered judgment sentencing the defendant to ten years' imprisonment in the penitentiary at hard labor. An appeal was taken therefrom and the only error assigned as committed by the district court was "in refusing to charge the jury on voluntary manslaughter notwithstanding that the evidence introduced justified such a charge."

Upon an examination of the record, we find that the defendant moved for general instructions on voluntary manslaughter and the court refused to deliver them. Did it err in acting thus? Not in our opinion, as we shall immediately see.

After the evidence for the prosecution had been introduced, the defendant, through his counsel, presented the case as follows:

". . . José Arroyo Rodríguez, the defendant, according to our theory, was a very old friend of Reimundo Médina. He was also a

friend of José Etanislao Fonseca but José Etanislao Fonseca and Reimundo Medina had been enemies for a long time, they had filed complaints against each other in the Municipal Court of Yabucoa for different offenses and were irreconciliable enemies, . . . Lately Reimundo Medina had been spreading rumors about Da. Julia González, the wife of don Miguel Medina and in those rumors he mentionel José Etanislao Fonseca, the deceased. On the day of the occurrence, . . . Reimundo Medina . . . had gone with some gossip . . . to doña Julia, doña Julia told her husband, Miguel Medina, and Miguel Medina went to town to get José Etanislao Fonseca to ask for an explanation. When Miguel Medina arrived at the scene of the occurrence, Reimundo started a discussion [with him] . . . very loud and very excited. José Etanislao Fonseca, the deceased, had remained somewhat behind . . . the wife, Julia González, took a stick and came to defend her husband, Miguel Medina, with the stick and attacked Reimundo Medina in the course of the discussion.

". . . In the excitement of the discussion . . . José Etanislao Fonseca, the deceased, called the defendant, José Arroyo Rodríguez . . . and told him that they should interfere and not permit their friend Miguel Medina to be killed. The defendant began to shout that he was going to establish peace between them and make them friends, and without having anything to do with any of those present, he got near during the discussion but the first one who reached the place was José Etanislao Fonseca, who took the stick away from Julia González . . . the defendant tried to take Miguel away, leaving Reimundo and left José Etanislao in a struggle and took Miguel to Emilio de León's house in order that he should not interfere in the struggle.

"The rest of our theory will arise from the evidence which we shall offer but we are going to prove that the defendant was not at the scene of the occurrence, that he did not get near at the time José Etanislao was killed. And if we succeed in making clear the mistery of this death by proving the innocence of the defendant, we shall ask you to bring in a verdict of not guilty."

So that the theory of the defendant did not consist in having killed Fonseca but in "not having committed the offense," in being "away from the scene of the occurrence," and the evidence which he immediately introduced was consistent with that theory.

Under these circumstances it is quite clear that the court was not bound to charge the jury on manslaughter. 4 Warren on Homicide, Permanent Edition, §339, p. 294, and §346, p. 426.

■ Defendant insists, however, that from the evidence for the prosecution there arises the possibility of manslaughter and this being so, that the charge should have been delivered.

What really appears from the evidence of the prosecution, is that in Yabucoa in the ward of Calabazas, in front of the house of Emilio de León, on June 7, 1938, about seven or eight o'clock at night, Miguel Medina had a discussion with his brother Raimundo because the latter had said that his wife had been unfaithful to him with Fonseca. Fonseca was present and intervened by striking Raimundo, who had a "machete," which fell to the ground.

The defendant, who was also there together with other persons, picked up the weapon and struck Fonseca with such force that he almost beheaded him.

Under these circumstances, even conceding that the defendant is an intimate friend of Raimundo Medina, the conclusion could never be reached that it was a case of manslaughter and not of murder, and therefore, the trial judge acted correctly in refusing to deliver a charge on manslaughter.

The district judge relied essentially on the authority of the case of *Commonwealth* v. *Paese,* 220 Pa. 371, 69 A. 891, 17 L.R.A. (N. S.) 795, which is a most applicable and interesting decision. The facts were in substance as follows. Three persons who had been drinking got into an altercation about fares with the conductor and motorman of a car. A fight ensued, although not involving the defendant, and the motorman beat one of them severely. The motorman started back to his post at the front of the car when the defendant, a person other than the three mentioned, drew a revolver

and fired five shots, stepping forward as he fired each shot. He was tried and convicted of murder in the first degree.

On appeal he alleged that the court had erred in refusing to deliver the following charge:

". . . 'If the jury believe that the deceased had just made an attack and committed a violent assault and battery upon George Paese, who was much the inferior of the deceased in size and weight, and that this was done in the presence of the defendant, who was the friend and companion of George Paese; and they also find that this attack so excited the passion of the defendant as to destroy all self-control, and that, in this condition of ungovernable rage and without sufficient cooling time, he shot and killed the person so attacking,—the grade of the homicide is clearly but manslaughter.' . . ."

And the court said: "The single question, therefore, remains whether, conceding the beating to have been such as, if inflicted upon the appellant himself, would have permitted the jury to reduce the killing to manslaughter, it can have that effect when made upon another merely a friend."

The court then made a careful and ample study on the authorities on this matter. In part, it stated thus:

"To reduce an intentional blow, stroke, or wounding resulting in death to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting,—if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder. *Com.* v. *Drum*, 58 Pa. 9 (17). What is sufficient provocation for this purpose has not been exactly defined, and is probably incapable of exact definition, for it must vary with the myriad shifting circumstances of men's temper and quarrels. It is a concession to the infirmity of human nature, not an excuse for undue or abnormal irascibility, and therefore to be considered in view of all the circumstances. It is usually said that the sufficiency of the provocation is for the court . . .

"* * * * * * *

"On the other hand, certain circumstances have been held to be sufficient provocation. Thus, in general, serious injury immediately inflicted or threatened to wife (or husband), child, or servant will, on account of the relationship of the parties, reduce the killing to manslaughter in similar cases as if the injury had been to self. The appellant claims that the same rule should be held in the case of a more distant relation, and even of a friend or companion; and his counsel have presented a brief of unusual learning and diligence on this point. The fullest discussion to be found is in *Com.* v. *Bell, Addison* (Pa.) 156, tried in 1793, where Judge Addison, after the manner of the time, delivered an elaborate charge, discussing the law in detail and referring to cases. In the course of it he says: An attack on the person and safety of a friend is a provocation sufficient to extenuate to manslaughter a sudden killing in the peril and defense of this friend. This was said *obiter*, as there was nothing in the case to which it could apply; but the same view has been stated from time to time by writers of considerable standing. Three cases are constantly cited and reiterated as authority for the doctrine: *Case of Manslaughter*, 12 Coke, 87; *Huggett's Case*, Hale, P. C. 465, s. c. J. Kelyng, 59; and *Queen* v. *Tooley*, 2 Ld. Raym, 1296. Critically examined, they afford the doctrine very doubtful support. . .

Upon a study of the decisions, it further said:

"Courts do not sanction the increase of excuses for taking life, already too numerous, except under compulsion of weighty authority. Such authority has not been found in favor of the doctrine that a mere bystander may interfere to the extent of killing with a deadly weapon in a stranger's quarrel, without being guilty of more than manslaughter. On the contrary, the fact that the annual thousands of homicides of the United States have produced no case in its favor is strongly persuasive that the doctrine, beyond the recognized cases of husband and wife, parent and child, or master and servant, has no proper place in American jurisprudence. For the protection of the weak and unfortunate and the assertion of the duties of humanity, reliance must be had on the ancient and settled right to interfere to prevent a felony, with its well-guarded limitations that the injury to be prevented must be serious, must be imminent and not past, the quarrel in actual progress, and the necessity for the use of a deadly weapon clear of doubt. Hale, P. C. 484; *Kilpatrick* v. *Com.*,

31 Pa. 198. Cases of killing without the use of a deadly weapon, and apparently lacking the element of presumed intent to kill, will be governed by the passage from Foster already cited."

See also the annotation to this case in L.R.A., especially when referring to "Friends." 17 L.R.A. (N. S.) 795, 797.

The evidence for the prosecution does not place the defendant herein within the scope of the decision cited—even the most favorable one—on this matter. What really appears from said evidence is not manslaughter but murder.

Voluntary manslaughter is the unlawful killing of a human being without malice upon a sudden quarrel or heat of passion. And murder is causing that same death with malice aforethought, either express or implied. It is express when there is manifested a deliberate intention unlawfully to take the life of a fellow-creature, and implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart. Sections 203, 199, and 200 of the Penal Code, 1937 ed. See also §§207, 208, and 209 of said Code which explain when homicide is execusable and justifiable.

The defendant had nothing to do with the discussion between the Medina brothers and he had nothing to do with the intervention of Fonseca. He was a mere bystander. The assault on Raimundo Medina by Fonseca with his fist while Medina was armed with a *"machete"* can not be considered as sufficient to produce in him, even though he were his intimate friend, such a heat of passion as to make him interfere in the manner in which he did, as a sufficient cause of provocation which would justify his intervention and much less his action. He had no need to use the deadly weapon which he used nor to exercise the degree of violence which he exercised.

His act of picking up the *"machete"* from the ground and inflicting on Fonseca such a terrible wound which caused his death shows the abandoned and malignant heart of which

the law speaks in defining implied malice aforethought which makes the unlawful killing a murder.

In view of the attendant circumstances, not only did the court act correctly in accordance with the facts and the law in refusing to deliver the charge, but that and no other was its rightful duty.

Since the only error assigned was not committed, the appeal must be dismissed and the judgment appealed from, rendered by the District Court of Humacao on January 22, 1942, must be affirmed.