EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ ARROYO RODRÍGUEZ, acusado y apelante.

Núm. 9649.—*Sometido:* Enero 19, 1943. *Resuelto:* Febrero 19, 1943.

*F. R. Aponte y M. Velázquez Flores,* abogados del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El Fiscal del Distrito de Humacao acusó a José Arroyo Rodríguez de haber dado muerte con malicia premeditada a José Etanislao Fonseca el siete de junio de 1938 en Yabucoa como consecuencia de una herida que le infiriera en el cuello con un machete.

Celebrado el juicio ante un jurado, rindió éste veredicto de culpable de asesinato en segundo grado, y solicitado un nuevo juicio, se negó, dictando la corte sentencia imponiendo al acusado diez años de presidio con trabajos forzados. Interpuesta apelación, se señala como único error el que se

atribuye a la corte de distrito "al negarse a instruir al jurado sobre homicidio voluntario, no obstante haberse presentado prueba que justifica tal instrucción."

■ Examinados los autos encontramos que en efecto el acusado solicitó instrucciones generales sobre homicidio voluntario y que la corte se negó a trasmitirlas. ¿Erró al proceder de tal modo? No, a nuestro juicio, como veremos en seguida.

Terminada la práctica de la prueba de cargo, el acusado, por medio de su abogado, presentó su caso como sigue:

"...José Arroyo Rodríguez, el acusado, de acuerdo con nuestra teoría era amigo íntimo, de muchos años, de Reimundo Medina. También era amigo de José Etanislao Fonseca, pero José Etanislao Fonseca y Reimundo Medina tenían una grandísima enemistad desde hacía mucho tiempo, se habían denunciado mútuamente ante la Corte Municipal de Yabucoa por diferentes delitos y eran enemigos irreconciliables,... Ultimamente Reimundo Medina se había dedicado a ciertas murmuraciones en contra de doña Julia González, esposa de don Miguel Medina, y en esas murmuraciones metía a José Etanislao Fonseca, el muerto. Ese día de la ocurrencia de los hechos,... Reimundo Medina...había ido con esas murmuraciones...donde doña Julia, doña Julia se lo dijo a su esposo Miguel Medina y Miguel Medina fué al pueblo, donde estaba José Etanislao Fonseca, a buscarlo para aclarar aquellas murmuraciones. Cuando llegó Miguel Medina al sitio de los hechos, Reimundo Medina entabló [con él] una discusión,...bastante fuerte y bastante acalorada. José Etanislao Fonseca, el muerto, se había quedado un poco atrás.... La esposa Julia González cogió un palo y vino a defender a su marido con el palo, a Miguel Medina, y atacó a Reimundo Medina en esa discusión.

"...ya prendida la discusión...José Etanislao Fonseca, el muerto, llamó al acusado José Arroyo Rodríguez...y le dice, vamos a intervenir y no dejemos que maten a nuestro amigo Miguel Medina. El acusado gritando, voy a meter la paz y meterlos en bien, sin tener nada con ninguno de los que allí habían, se acercó durante la discusión, pero el primero que llegó fué José Etanislao Fonseca y le quitó un palo que tenía Julia González,...el acusado trata de llevarse a Miguel, deja a Reimundo y deja a José Etanislao en una lucha y se trae a Miguel para que no interviniera en la lucha, hacia la casa de Emilio de León.

"El resto de nuestra teoría surgirá de la prueba que nosotros les presentaremos, pero nosotros vamos a tratar de probar que el acusado no cometió el delito, que el acusado estaba fuera del sitio de los hechos; no se acercó en el momento en que quedó José Etanislao Fonseca muerto, y si nosotros logramos probar todo esto, si nosotros logramos aclarar este misterio de esta muerte, probando nosotros la inocencia de este acusado, vamos nosotros a solicitar de Uds. un veredicto absolutorio para el acusado."

De suerte que la teoría del acusado no consistió en haber dado muerte a Fonseca, sino en no haber "cometido el delito," en estar "fuera del sitio de los hechos." Y la evidencia que seguidamente presentara fué congruente con la teoría que expusiera.

Bajo esas circunstancias es bien claro que la corte no estaba obligada a trasmitir instrucciones sobre homicidio. 4 Warren *on Homicide*, Permanent Edition, sección 339, pág. 294 y sección 346, pág. 426.

■ Se insiste sin embargo en que de la prueba de cargo surge la posibilidad del homicidio y que siendo ello así procedía la instrucción.

Lo que en sustancia resulta de la prueba de cargo es que en Yabucoa, en el barrio de Calabazas, frente a la casa de Emilio de León, el siete de junio de 1938, de siete a ocho de la noche, Miguel Medina sostenía una discusión con su hermano Raimundo porque éste había dicho que su esposa le había sido infiel con Fonseca. Fonseca se hallaba presente e intervino dando un puño a Raimundo que estaba armado de machete, cayendo el machete al suelo.

El acusado que también se encontraba allí en unión de otras personas, cogió el arma del suelo y dió a Fonseca tan tremendo machetazo que le cercenó casi por completo la cabeza.

Bajo esas circunstancias aunque se aceptara que el acusado era amigo íntimo de Raimundo Medina, jamás podría concluirse que se trataba de un caso de homicidio y no de asesinato, habiendo actuado por tanto el juez sentenciador correctamente al negarse a trasmitir la instrucción.

El juez de distrito descansó principalmente en la autoridad del caso de *Commonwealth* v. *Paese*, 220 Pa. 371, 69 A. 891, 17 L.R.A. (N. S.) 795, que es una decisión sumamente ilustrativa e interesante. Los hechos fueron en sustancia los siguientes. Tres personas que habían estado bebiendo tuvieron una disputa sobre tarifas con el conductor y motorista de un auto. Una de ellas, que no era el acusado, se fué a las manos con el motorista quien era más alto y de mayor peso que él y quien lo golpeó severamente. El motorista se dirigió entonces a su puesto al frente del auto y en ese momento el acusado, otra de las tres personas indicadas, sacó su revólver y le disparó cinco tiros, adelantándose mientras disparaba cada tiro. Fué juzgado y convicto de asesinato en primer grado.

En apelación se imputó como error al no haber la corte trasmitido la siguiente instrucción:

"...'Si el jurado cree que el interfecto había atacado y cometido un acometimiento y agresión grave en la persona de George Paese, que era inferior al interfecto en tamaño y peso, y que esto fué realizado en presencia del acusado, quien era amigo y acompañante de George Paese; y si también encuentran que este ataque excitó en tal forma el ánimo del acusado como para destruir su dominio propio, y que en esta condición de súbita pasión y sin que hubiese suficiente tiempo para calmarse, le disparó y mató al agresor, el grado del delito es claramente homicidio.'..."

Y la corte dijo: "La cuestión en tal virtud a resolver es la de si aceptando que la agresión de haberse inflingido contra el acusado hubiera permitido al jurado reducir el delito al grado de homicidio, puede tener ese mismo efecto cuando se perpetra en la persona de un amigo."

Procedió entonces a estudiar con gran cuidado y extensión la jurisprudencia sobre la materia. En parte, se expresó así:

"Para reducir un golpe o herida que resulte en la muerte a homicidio voluntario, debe haber suficiente causa de provocación y un estado de cólera sin tiempo para calmarse, colocando al acusado

fuera del dominio de su razón e impulsándolo a realizar el hecho. Si alguno de estos elementos falta, si ha habido provocación sin cólera, o cólera sin suficiente causa de provocación, o ha habido suficiente tiempo para calmarse, o si là razón ha vuelto a predominar, el delito será asesinato. *Commonwealth* v. *Drum,* 58 Pa. 9 (17). Lo que constituye suficiente provocación para este propósito no se ha definido exactamente, y es probablemente imposible de una definición exacta, porque debe variar con las mil circunstancias del temperamento humano. Es una concesión a la flaqueza de la naturaleza humana, no una excusa para la ira anormal e indebida y por tanto debe considerarse con vista a todas las circunstancias. Se ha dicho correctamente que el grado de suficiencia de la provocación debe decidirse por la corte...

" .        .        .        .        .        .        .

"Por otro lado, se ha sostenido que ciertas circunstancias constituyen suficiente provocación. Así, en general, daño serio infligido o que se amenaza infligir al cónyuge, hijo o criado reducirían la muerte a homicidio debido a la relación de las partes en casos similares como si el daño hubiera sido infligido a la propia persona. Y el apelante alega que igual regla debe aplicarse en el caso donde hay una relación más remota, como en el de un amigo o compañero...La discusión más amplia sobre el punto se encuentra en *Pennsylvania* v. *Sell,* Addison (Pa.) 156, juzgado en 1793, en el cual el juez Addison, siguiendo la costumbre de la época, emitió una instrucción elaborada discutiendo los puntos de derecho en detalle y refiriéndose a la jurisprudencia. En el curso de la misma dice: un ataque a la persona o seguridad de un amigo es suficiente provocación para rebajar a homicidio una muerte súbita en el peligro y defensa de ese amigo. Esto se dijo como un *dictum* ya que no había nada en el caso a lo cual debiera aplicarse, pero el mismo punto de vista ha sido expuesto de tiempo en tiempo por comentaristas de considerable peso. Tres casos se citan constantemente y se reiteran como autoridades para la doctrina: *Case of Manslaughter,* 12 Coke, 87; *Huggett's Case,* Hale, Pleas of the Crown, 465, *S. C.,* J. Kelyng, 59; y *Queen* v. *Tooley,* 2 Ld. Raym., 1296. Críticamente examinados ellos ofrecen un respaldo muy dudoso a la doctrina....

Estudiada la jurisprudencia, sigue diciendo:

"Las cortes no sancionan la extensión de excusas para privar de la vida, que actualmente son demasiado numerosas, a menos que estén obligadas por el peso de las autoridades. Esa autoridad no ha sido encontrada para sostener que un mero espectador puede intervenir

hasta el extremo de quitar la vida con un arma mortífera en la disputa de un extraño, sin que sea únicamente culpable de homicidio. Contrariamente el hecho de que anualmente millares de casos de: homicidio de los Estados Unidos no han producido doctrina alguna en ese sentido, fuera de los casos reconocidos de esposo y esposa, padre e hijo, principal y dependiente, hacen claro que no tiene sitio en la jurisprudencia americana. Para la protección de los débiles e infortunados y la afirmación de los deberes de humanidad debe confiarse en el viejo derecho aceptado de intervenir para evitar la comisión de un delito grave, con su limitación celosamente sostenida de que el daño a ser prevenido debe ser serio, inminente y actual, mientras la disputa se está desarrollando, y demostrarse claramente la necesidad del uso de un arma mortífera fuera de toda duda. Hale, Pleas of the Crown, 484; *Kilpatrick* v. *Commonwealth*, 31 Pa. 198. Casos de muerte sin el uso de un arma mortífera y estando ausente aparentemente el elemento de intención de matar están controlados por la cita de Foster que se ha expuesto anteriormente.''

Véase además la nota de L.R.A. al reportar el caso, especialmente en lo que se refiere a ''Amigos.'' 17 L.R.A. (N. S.) 795, 797.

La prueba de cargo no coloca al acusado en este caso dentro del alcance de la jurisprudencia citada—aun del de la más favorable—sobre el particular. Lo que de dicha prueba surge no es un homicidio sino un asesinato.

Homicidio voluntario es dar muerte ilegal a un ser humano sin que medie malicia, en ocasión de una súbita pendencia o arrebato de cólera. Y asesinato, es causar esa misma muerte con malicia premeditada expresa o tácita, siendo expresa la premeditación cuando se manifiesta el propósito deliberado de quitar la vida ilegalmente al semejante, y tácita cuando no resulta notable provocación o las circunstancias que concurren demuestran un corazón pervertido y maligno. Artículos 203, 199 y 200 del Código Penal, ed. 1937. Véanse además los artículos 207, 208 y 209 de dicho Código que tratan sobre la excusa y justificación del homicidio.

El acusado nada tenía que ver con la discusión entre los hermanos Medina. Nada tampoco con la intervención de

Fonseca en la misma. Era un mero espectador. La agresión de Fonseca a Raimundo Medina con el puño estando Medina armado de un machete, no puede considerarse como suficiente para producir en él, aunque fuera su íntimo amigo, un arrebato de cólera tal que lo llevara a intervenir en la forma en que lo hizo, como provocación bastante que justificara su intervención, ni menos su acción. No tuvo necesidad de usar el arma mortífera que usara, ni de ejercer el grado de violencia que ejerciera.

Su acto tomando el machete del suelo y asestando a Fonseca la tremenda herida que le causó la muerte, demuestra el corazón pervertido y maligno de que habla la ley al definir la malicia premeditada tácita que convierte la muerte ilegal en asesinato.

Bajo las circunstancias que concurren no sólo procedió correctamente, de acuerdo con los hechos y la ley, la corte sentenciadora al negarse a trasmitir la instrucción, si que ése y no otro era su claro deber.

*No habiéndose cometido el único error que se señala, procede declarar el recurso sin lugar y confirmar la sentencia apelada que dictó la corte de distrito de Humacao el 22 de enero de 1942.*